Kay L. Keating, appellant, v. Michael D. Wiese and City of Lincoln, appellees.

510 N.W.2d 433

Filed June 8, 1993.   No. A-91-1014.

Douglas McArthur for appellant.

William F. Austin, Lincoln City Attorney, and James D. Faimon for appellees.

Sievers, Chief Judge, and Irwin and Wright, Judges.

Wright, Judge.

Kay L. Keating brought an action against the City of Lincoln and one of its bus drivers, Michael D. Wiese, following an automobile-bus accident. Keating appeals the district court's sustaining of the appellees' demurrer and the court's dismissal of her petition with prejudice.

Because this case comes to us based on a demurrer, we recognize that we are required to accept as true all the facts which are well pled and the proper and reasonable inferences of

law and fact which may be drawn from the pleadings, but we do not accept the conclusions of the pleader. *Lewis v. Union Pacific RR. Co.*, 242 Neb. 744, 497 N.W.2d 33 (1993). We cannot assume the existence of any fact which was not alleged in the pleadings, make factual findings to aid the pleadings, or consider evidence which might be adduced at trial. *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992).

Keating's amended petition, filed February 22, 1991, alleged that Keating was injured April 17, 1989, after her car was struck by a city bus driven by Wiese. She alleges that at approximately 7:20 a.m., she was waiting at a red light in the northbound lane of 70th Street. Wiese was driving the bus eastbound on Holdrege Street and then turned onto 70th Street to proceed north. After completing the turn, Wiese allegedly drove the bus across the centerline and hit Keating's vehicle. We note that the accident could not have occurred as the facts are described in the petition. Keating alleged that she was in the northbound lane and that the bus struck her vehicle when it turned north. For the accident to have taken place as described, Keating's vehicle must have been in the southbound lane on 70th Street. However, this discrepancy is not decisive of the case.

Keating alleged that Wiese failed to maintain a proper lookout and to keep his vehicle under reasonable control and that he drove his vehicle to the left of the centerline. The amended petition stated that Wiese violated a city ordinance by crossing the centerline and that he was acting within the scope of his employment at the time. Keating claimed that she sustained injuries to her cervical and lumbar spine, resulting in medical expenses of $1,225.14 and a permanent disability. She alleged that she incurred lost wages of $348.84 and that she suffered pain and mental anguish.

Keating alleged that on April 19, 1989, she sent written notice of the accident and her claim to the Lincoln city clerk, who referred her claim to the city risk manager. The risk manager acknowledged receipt of the claim on April 27, 1989. A copy of the plaintiff's doctor's report summarizing his diagnosis was sent to the risk manager on January 26, 1990. Keating was referred to physical therapy from June 13 to July 19, 1990.

The amended petition averred that on November 14, 1990,

Keating mailed a settlement resume, along with bills and medical reports, to the city risk manager, proposing a settlement of $60,000. The defendants' risk manager rejected the proposal and offered $6,450. Keating rejected the counteroffer and notified the risk manager that she would pursue her claim through district court. The first petition was filed on January 18, 1991.

Keating's amended petition also claimed damages for her husband, Darrell D. Keating, for loss of household services, society, and companionship and for impairment of his marital relationship.

Although we may not consider evidence which may be adduced at trial, we may consider documents attached to and made part of the petition. *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991). Keating has attached two documents to her amended petition—a letter to Paul Malzer, Jr., city clerk, dated April 19, 1989, and a response from Kent Imig, claims specialist in the city-county risk management office, dated April 27, 1989. In the letter to Malzer, Keating's attorney notified the city that he was representing the Keatings in connection with the damages sustained when the bus struck Keating's car.

The letter stated in part:

> We are not making a formal claim at this time, simply because it is impossible to determine the extent of Mrs. Keating's damages. I would, however, appreciate it if you would forward a copy of this letter, together with the accident report, to your insurer and ask that their adjustor contact me as soon as possible.

Imig's response noted that the city was aware that a proper evaluation of Keating's claim was not possible at that time. He asked that Keating advise the risk management office concerning any medical expenses she incurred and medical reports regarding her condition. The letter stated that the city was self-insured and that the claim would be handled between the risk management office and the city law department.

In the demurrer, the defendants asserted that the court had no personal or subject matter jurisdiction, that the plaintiff had no legal capacity to sue, and that the amended petition did not

state facts sufficient to constitute a cause of action. On October 4, 1991, the demurrer was sustained. The court found that it did not have personal or subject matter jurisdiction and that the plaintiff had failed to comply with the requirements of Neb. Rev. Stat. §§ 13-905 and 13-920(1) (Reissue 1991), citing *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989). The court dismissed the petition after finding that the defect could not be cured by amendment.

The appellant argues that the allegations in her amended petition state a cause of action because they reflect full compliance with the notice provisions of the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991). We agree and find that the trial court's dismissal was wrong. We reverse the decision of the trial court and remand the cause for further proceedings.

We first look at whether Keating met the statute's requirements concerning the initial notice of the alleged negligence, because compliance with the notice requirement of § 13-905 is a procedural precedent to commencement of the negligence action. See *Miles v. Box Butte County*, 241 Neb. 588, 489 N.W.2d 829 (1992). Section 13-905 provides that all tort claims brought under the act "shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision . . . ." Keating's letter to the city clerk, which advised him that she had sustained injuries on April 18, 1989, when her vehicle was struck by a city bus, provided notice to the city that a negligence action might follow.

We next address the trial court's finding that Keating failed to meet the requirements of § 13-920(1), which provides that a suit cannot be commenced unless the claim was submitted in writing to the governing body within 1 year after the claim accrued. The record shows that the accident occurred on April 17 or 18, 1989, and that the letter to the city was sent on April 19, 1989. The city's response came on April 27, 1989. The claim was submitted within the 1-year period.

The statute provides additional time requirements which were met by Keating, although not mentioned by the district court. Section 13-920(2) provides that no suit is permitted

unless the governing body of the subdivision has made final disposition of the claim. If the governing body does not dispose of the claim within 6 months after the claim is filed, the claimant may, by notice in writing, withdraw the claim and begin suit. In this case, the 6-month period requires that the city's governing body should have disposed of the claim by October 18, 1989. The record does not indicate that the city's governing body took any action on the claim.

When the governing body has not disposed of the claim within the allotted time period, the statute provides that the claimant *may* notify the body in writing of the claim's withdrawal. Nebraska law concerning statutory construction provides that "[w]hen the word may appears, permissive or discretionary action is presumed. When the word shall appears, mandatory or ministerial action is presumed." Neb. Rev. Stat. § 49-802(1) (Reissue 1988). Applying this construction to the Political Subdivisions Tort Claims Act, we find that written notice of the withdrawal of a claim from the consideration of the governing body is not mandatory, but is permissive or discretionary. Notice of withdrawal of a claim is not a requirement for commencing suit and applies only if the plaintiff wishes to extend the time period for filing suit under § 13-919(1). See *Ragland v. Norris P. P. Dist.*, 208 Neb. 492, 304 N.W.2d 55 (1981). The 6-month extension is not an issue in this case, however, because Keating's suit was filed on January 18, 1991, well within the 2-year statutory period. We find that Keating met the notice requirements for filing a claim.

In sustaining the demurrer, the court cited *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989), in which the appellant, who was injured while boarding a city bus, filed a negligence action against the city under the Political Subdivisions Tort Claims Act. The injury occurred on June 22, 1984, and the plaintiff did not contact the Lincoln Transportation System (LTS) until March 1, 1985. On that date, his attorney sent a letter to LTS asking that the city's insurance representative contact him. The city risk manager did not recall receiving a copy of that letter, but had received a letter on July 31, 1986, from the city attorney, which included a copy of Willis' petition against the city. The district court granted the

city's motion for summary judgment after determining that Willis had not complied with the act's notice requirements.

On appeal, Willis argued that his attorney's letter to LTS substantially complied with the notice requirements of the act. Quoting *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 417 N.W.2d 757 (1988), the Supreme Court held that the notice requirements under the act are to be liberally construed so that a meritorious claim will not be denied based on technical noncompliance with the act. " 'Therefore, substantial compliance with the statutory provisions pertaining to a claim's content supplies the requisite and sufficient notice to a political subdivision in accordance with [§ 13-905], when the lack of compliance has caused no prejudice to the political subdivision ....' " *Willis*, 232 Neb. at 538, 441 N.W.2d at 849.

The *Willis* case turned on whether the proper person had been notified of the claim. The Supreme Court noted that earlier decisions concerning substantial compliance with the act dealt with arguments offered by political subdivisions that the *content* of a filed claim was deficient as notice to the governmental subdivision. In Willis' case, because the city did not contend that the content of the attorney's letter was inadequate notice, the court gave no opinion as to whether the attorney's letter contained a claim which complied with § 13-905. *Willis, supra.*

The court stated that a notice of claim filed only with a person who is not authorized by the statute to receive the claim does not substantially comply with the act's notice requirements. "Willis' notice of claim, which was not sent to or received by an entity designated by § 13-905, does not substantially comply with the notice requirements of the Political Subdivisions Tort Claims Act." *Willis*, 232 Neb. at 539, 441 N.W.2d at 850.

We believe the district court here misplaced its reliance on this case. The issue in the case at bar is not whether the notice was sent to an authority as designated in the act. Keating's letter, which was sent within 1 year of the occurrence giving rise to the claim, was sent to the city clerk, while in *Willis*, the initial notice was sent to LTS. The act provides that the notice should be filed with the clerk whose duty it is to maintain the official records of

the subdivision, and we find that the city clerk is such an authority.

We next address whether the content of Keating's letter substantially complied with the act's requirements. "[C]ompliance with the filing or presentment of claim provision in § 13-905 of the Nebraska Political Subdivisions Tort Claims Act is not a jurisdictional prerequisite for adjudication of a tort claim against a political subdivision." *Millman v. County of Butler*, 235 Neb. 915, 923, 458 N.W.2d 207, 212-13 (1990). The filing of a claim is a condition precedent to the commencement of a tort action against a subdivision, but is not a condition precedent to a political subdivision's tort liability or a substantive element for a claimant's recovery in a negligence action. *Id*. The act "affords a governmental subdivision a pre-action opportunity, or a period before commencement of a lawsuit, to examine the merits of a tort claim and possibly avoid the expense, time, and varied but frequent rigors of litigation to dispose of a claim." *Id*. at 925, 458 N.W.2d at 214.

While Keating's letter did not specify the location of the accident, the Supreme Court has held that such a failure to specify the location and exact time of an accident is not fatal to the claim. In *Franklin v. City of Omaha*, 230 Neb. 598, 432 N.W.2d 808 (1988), the letter sent to the city clerk stated only the names of the claimant and that the injuries were suffered in a collision with a car which was being pursued by a police cruiser. The purpose of the notice requirement is not to provide a statement of fact which demonstrates the governmental subdivision's absolute liability. The written claim serves to notify a political subdivision of possible liability for its recent act or omission, provide an opportunity " 'to investigate and obtain information about [the subdivision's] allegedly tortious conduct,' " and enable it " 'to decide whether to pay the claimant's demand or defend the litigation predicated on the claim made.' " *Id*. at 600, 432 N.W.2d at 810, quoting *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 417 N.W.2d 757 (1988). The grant of summary judgment for the city was reversed. The court noted that the evidence did not suggest that the city had been unable to determine the basis of the claim or

that the city was prejudiced by any claimed omission. *Franklin, supra.*

In the present case, the city relies on *Peterson v. Gering Irr. Dist.*, 219 Neb. 281, 363 N.W.2d 145 (1985), in which the Supreme Court held that a document served upon an irrigation district was not a claim under the Political Subdivisions Tort Claims Act. The purported claim gave notice to the district that it had negligently failed to deliver water and that the district would be held " 'liable for whatever damages *may result* as a result of failure to deliver water . . . .' " (Emphasis in original.) *Peterson*, 219 Neb. at 284, 363 N.W.2d at 147. The court found that the notice did not meet the act's requirements because "it made no demand against the district," but "alerted the district to the possibility of a claim." *Id.* Because the document did not state the amount of damages or loss or allege that the damages or loss had occurred, it did not satisfy the act's requirements.

However, in *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. 785, 420 N.W.2d 291 (1988), the court took a closer look at *Peterson* and found that the court had been concerned that the plaintiffs make an actual demand upon the defendant. The questionable language in the "claim" was " 'whatever damages *may result* . . . .' " (Emphasis in original.) *West Omaha Inv.*, 227 Neb. at 789, 420 N.W.2d at 294. The court found that West Omaha Investments had stated that the defendant was responsible for property loss which occurred, although it did not specify an exact dollar amount. Unlike the notice in *Peterson*, which merely alerted the defendant to the possibility of a future claim for future damages, West Omaha Investment's letter stated that a claim was being made against the defendant for actual property loss caused in part by the defendant's negligence. The act does not mandate that the claim specify the amount of damages or loss.

Keating's letter to the city clerk and its attached copy of the accident report notified the city that she had sustained damages as a result of a collision with a city bus on April 18, 1989. The accident report would adequately inform the city of the time and place of the accident. We do not find that Keating's failure to specify the time or location of the accident or the amount of damages in her amended petition requires the dismissal of that

petition.

The letter to the city clerk substantially complies with the notice requirements of the act. The city knew of its possible liability for the recent accident, and the city was given the opportunity to investigate and obtain information about the accident. The city did not ask for additional details concerning the site or time of the accident. In its response, the city asked only for information on Keating's medical expenses and her condition, and noted that the "claim" would be handled between the risk management office and the city law department.

After the letter was received, the city had the opportunity to decide whether to pay Keating's demand or to defend the litigation predicated on the claim. Even though the letter stated that it was not a "formal claim"—a poor choice of words—the city's interpretation of the letter indicates that the city considered it a claim, and we find that the letter was a claim. As indicated by the allegations in Keating's amended petition, the city made a settlement offer based solely on the information in the letter. In *Braesch v. Union Ins. Co.*, 237 Neb. 44, 54, 464 N.W.2d 769, 775 (1991), the court noted that "[t]he offer of settlement of a lawsuit assumes that an action has been filed."

This case was decided at an early stage in the proceedings. After the demurrer was sustained, the city was not required to answer or to assert affirmative defenses. Our review of a demurrer differs from our review of a grant of summary judgment in that we consider only the pleadings. A reexamination of the amended petition shows that Keating alleged the necessary facts to bring the action under the Political Subdivisions Tort Claims Act. She alleged that the accident occurred and that she had sent written notice to the city clerk within the allotted time period. Her amended petition states a cause of action which is not barred by failure to comply with the provisions of the Political Subdivisions Tort Claims Act. The trial court erred in sustaining the demurrer on that basis.

The trial court also found that the defect could not be cured by amendment. Because we find no defect, we do not address that issue except to note that if a demurrer is sustained, the

adverse party may amend, if the defect can be remedied by way of amendment, at the court's discretion. Neb. Rev. Stat. § 25-854 (Reissue 1989). Where a reasonable possibility exists that a defective petition may be cured by amendment, denying the plaintiff the opportunity to replead is an abuse of discretion. *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992).

We find that the amended petition, with reasonable inferences drawn from it, states a cause of action against the city and that the letter to the city clerk substantially complies with the notice requirements of the Political Subdivisions Tort Claims Act. The trial court erred in dismissing the petition. We reverse the judgment of the trial court sustaining the defendants' demurrer and dismissing the petition. The cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.