MARILYN JESSEN, PERSONALLY AND AS SPECIAL ADMINISTRATOR
OF THE ESTATE OF ALFRED S. JESSEN, DECEASED, APPELLANT,
V. RAJESH MALHOTRA AND KEARNEY COUNTY, A POLITICAL
SUBDIVISION DOING BUSINESS AS KEARNEY COUNTY
HEALTH SERVICES AND KEARNEY COUNTY
MEDICAL CLINIC, APPELLEES.

665 N.W.2d 586

Filed July 18, 2003.   No. S-02-671.

E. Terry Sibbernsen and Mandy L. Strigenz, of E. Terry
Sibbernsen, P.C., for appellant.

Charles W. Campbell, of Angle, Murphy, Valentino & Campbell, P.C., for appellee Kearney County.

William L. Tannehill and Corey L. Stull, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellee Rajesh Malhotra.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Marilyn Jessen (Jessen), personally and as special administrator of the estate of Alfred S. Jessen, appeals from an order of the district court granting summary judgment in favor of the appellees, Dr. Rajesh Malhotra and Kearney County. We affirm the district court's decision because Jessen failed to submit a claim within 1 year of the accrual of such claim in accordance with the Political Subdivisions Tort Claims Act (Tort Claims Act), Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997).

## BACKGROUND

In her petition filed in the district court, Jessen alleged that on October 14, 1998, Malhotra was employed as a medical doctor by Kearney County when he examined Alfred at the medical clinic operated by Kearney County, known as Kearney County Health Services and Kearney County Medical Clinic. Malhotra allegedly diagnosed Alfred as having atypical chest pain and indicated that he would follow up with Alfred at a later date. Alfred died on October 16, 1998. Jessen further alleged that an autopsy revealed that Alfred suffered from atherosclerotic coronary artery disease and died of a myocardial infarction. Two weeks after Alfred's death, Jessen sent a handwritten letter to Malhotra. The letter, dated October 30, 1998, states in full:

Dr. Malhotra,

Al Jessen was in to see you on Wed., Oct. 14th for terrible pain in the chest area.

You told him to go home and take Motrin — that he looked too good for it to be his heart. . . . He died Oct. 16th.

The autopsy report says the infarction was 3-5 days old. He was in your care at the time he was having this and you

sent him home. This is malpractice . . . We are very angry.
Family of Al Jessen

On February 22, 2000, Jessen filed a negligence action against Malhotra in the U.S. District Court for the District of Nebraska. The complaint did not allege compliance with the Tort Claims Act. In his amended answer, Malhotra alleged that he was employed by Kearney County Health Services, a governmental subdivision of Kearney County. Malhotra further alleged that Jessen had failed to comply with the Tort Claims Act. On September 8, 2000, the federal district court granted summary judgment in favor of Malhotra and dismissed Jessen's action without prejudice for failing to comply with the Tort Claims Act. See *Jessen v. Malhotra*, 112 F. Supp. 2d 917 (D. Neb. 2000).

On October 12, 2000, Jessen filed a petition in the district court for Kearney County against Malhotra and Kearney County. In addition to the factual allegations recited above, the petition alleged it was filed within 6 months of the federal district court's determination that the Tort Claims Act provided the exclusive remedy for Jessen's claim. See § 13-919(2). In their respective answers, Malhotra and Kearney County admitted that Malhotra was employed as a medical doctor by Kearney County and again alleged that Jessen failed to comply with the notice requirements of the Tort Claims Act. However, Kearney County later filed an amended answer alleging that Malhotra was an employee of Kearney County Health Services, which was a political subdivision separate and distinct from Kearney County. After the amended answer was filed, Jessen filed written notices of claim with Kearney County and Kearney County Health Services on April 26, 2001.

Malhotra and Kearney County filed motions for summary judgment. On May 23, 2002, the district court granted Malhotra's and Kearney County's motions for summary judgment and dismissed the case, finding that the action was barred by the doctrines of res judicata and collateral estoppel. Jessen appeals.

## ASSIGNMENTS OF ERROR

Jessen assigns that the district court erred in (1) ruling that Jessen's case was barred by the doctrine of res judicata, (2) ruling that Jessen's case was barred by the doctrine of collateral

estoppel, (3) not reaching an independent conclusion on the issue of notice, (4) determining that Jessen did not comply with § 13-919(2), (5) not ruling that the appellees should be estopped from asserting a violation of the Tort Claims Act, (6) not determining that a genuine issue of material fact exists with regard to Malhotra's employment status, and (7) not allowing Jessen to file her third amended petition and/or in dismissing with prejudice her third amended petition.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Hamilton v. Nestor*, 265 Neb. 757, 659 N.W.2d 321 (2003). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

The district court determined that Jessen's action in state court was barred by the doctrines of res judicata and collateral estoppel and granted summary judgment in favor of Malhotra and Kearney County accordingly. We have held that where the record adequately demonstrates that the decision of a trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, an appellate court will affirm. *Egan v. Stoler*, 265 Neb. 1, 653 N.W.2d 855 (2002). Such is the situation before us now. We decline to apply the doctrines of res judicata and collateral estoppel because the record demonstrates that Malhotra and Kearney County are entitled to summary judgment for reasons different than those utilized by the district court, as we explain below.

The Tort Claims Act is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees. *Keller v. Tavarone*, 265 Neb. 236, 655 N.W.2d 899 (2003). It is undisputed that Kearney County Health Services, a county-owned hospital created pursuant to Neb. Rev. Stat.

§ 23-3501 et seq. (Reissue 1997 & Cum. Supp. 2002), and Kearney County are political subdivisions subject to the Tort Claims Act. While Jessen argues on appeal that the district court should have found the existence of an issue of material fact regarding Malhotra's employment status, our review of the record reveals no instance prior to appeal in which she took the position that Malhotra was an independent contractor rather than an employee, and thus not subject to the provisions of the Tort Claims Act. Where a particular theory of the case is not stated in a plaintiff's petition, he or she cannot raise it for the first time on appeal. *Hauser v. Nebraska Police Stds. Adv. Council,* 264 Neb. 944, 653 N.W.2d 240 (2002).

■ While not a jurisdictional prerequisite, the filing or presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the Tort Claims Act. *Keller v. Tavarone, supra.* Section 13-920(1) provides, in relevant part:

No suit shall be commenced against any employee of a political subdivision for money on account of damage to or loss of property or personal injury to or the death of any person caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment . . . *unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued . . . .*

(Emphasis supplied.)

Jessen's claim for medical malpractice accrued on October 14, 1998. Under § 13-920(1), Jessen was required to submit a written claim to the appropriate political subdivision by October 14, 1999. She argues that her October 30, 1998, letter to Malhotra was such a claim. Assuming without deciding that the letter was filed with an individual or office designated in the Tort Claims Act as an authorized recipient of a claim, we conclude that the content of the letter was insufficient to satisfy the requirements of § 13-905.

■ The requisite content of a written claim is addressed in § 13-905, which requires that all claims "shall be in writing and shall set forth the time and place of the occurrence giving rise to the claim and such other facts pertinent to the claim as are

known to the claimant." We have held that with regard to a claim's content, substantial compliance with the statutory provisions supplies the requisite and sufficient notice to a political subdivision. *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999).

In addition, we have previously construed the predecessor to § 13-905 to require that a written claim make a demand upon a political subdivision for the satisfaction of an obligation rather than merely alerting the political subdivision to the possibility of a claim. *Peterson v. Gering Irr. Dist.*, 219 Neb. 281, 363 N.W.2d 145 (1985). See, also, *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. 785, 420 N.W.2d 291 (1988). The purported claim filed in *Peterson* gave notice that the claimants would hold the political subdivision liable for " 'whatever damages may result as a result of' " the political subdivision's negligent act, without specifying the damages the claimants sought to recover. (Emphasis omitted.) *Peterson v. Gering Irr. Dist.*, 219 Neb. at 284, 363 N.W.2d at 147. We held that the claim did not make a demand against the political subdivision and therefore did not satisfy the provisions of the Tort Claims Act. *West Omaha Inv. v. S.I.D. No. 48, supra*, illustrates a written claim that passed statutory muster. There, the claimant filed a claim pursuant to the Tort Claims Act " '*for the property loss*' " caused in part by the political subdivision's negligence, and thus made a proper demand to the political subdivision. (Emphasis supplied.) *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. at 788, 420 N.W.2d at 294.

■ The written claim required by the Tort Claims Act notifies a political subdivision concerning possible liability for its relatively recent act or omission, provides an opportunity for the political subdivision to investigate and obtain information about its allegedly tortious conduct, and enables the political subdivision to decide whether to pay the claimant's demand or defend the litigation predicated on the claim made. *Cole v. Isherwood*, 264 Neb. 985, 653 N.W.2d 821 (2002). Without a proper demand of the relief sought to be recovered, a written claim fails to accomplish one of its recognized objectives: to allow the political subdivision to decide whether to settle the claimant's demand or defend itself in the course of litigation.

Evaluating Jessen's October 30, 1998, letter against this rule, we conclude that the content of the letter was not sufficient to satisfy the requirements of a written claim under § 13-905. The letter stated that Alfred had been examined by Malhotra and further implies that Malhotra negligently failed to diagnose Alfred's condition, a condition which led to Alfred's death. The letter accuses Malhotra of malpractice, but does not make a demand upon Malhotra for the satisfaction of any obligation or convey what relief is sought by Jessen. The content of the letter does not satisfy the requirements of § 13-905. There is no other evidence that a written claim was timely filed with any political subdivision. Thus, Jessen failed to comply with a condition precedent to the commencement of a suit under the Tort Claims Act. See *Keller v. Tavarone*, 262 Neb. 2, 628 N.W.2d 222 (2001). In addition, Jessen's federal court action was filed more than 1 year after the accrual of her claim. Under our recent holding in *Keller v. Tavarone*, 265 Neb. 236, 655 N.W.2d 899 (2003), the savings clause of § 13-919(2) affords her no additional time to make a claim. Although our reasoning differs from that of the district court, the court did not err in finding that Malhotra and Kearney County were entitled to judgment as a matter of law. Because this holding is dispositive, we need not address Jessen's other assignments of error. The judgment of the district court is affirmed.

AFFIRMED.

STEPHAN, J., not participating.