THE ESTATE OF LEE ANNA MCELWEE, DECEASED,
BY AND THROUGH HER COPERSONAL REPRESENTATIVES,
JACQUELYNE MCELWEE-BROWN ET AL., APPELLEE, V.
OMAHA TRANSIT AUTHORITY, ALSO KNOWN AS THE
TRANSIT AUTHORITY OF OMAHA, DOING BUSINESS AS
METRO AREA TRANSIT, A POLITICAL SUBDIVISION,
AND KATHRYN WALTRIP, APPELLANTS.

664 N.W.2d 461

Filed July 11, 2003. No. S-02-692.

318

Jeffrey J. Blumel and Tyler P. McLeod, of Abrahams, Kaslow & Cassman, L.L.P., for appellants.

John E. Corrigan, of Law Office of John P. Fahey, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## NATURE OF CASE

The Omaha Transit Authority, doing business as Metro Area Transit, and Kathryn Waltrip (collectively MAT) appeal from a judgment entered against them pursuant to the Political Subdivisions Tort Claims Act (the Act), Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997). The dispositive issue presented in this appeal is whether the plaintiff, the estate of Lee Anna McElwee, presented its claim to MAT in compliance with the notice provisions of the Act.

## BACKGROUND

On November 13, 1998, McElwee was struck by a MAT bus operated by Waltrip in the parking lot of the Crossroads Mall in Omaha, Nebraska. McElwee, who was 70 years old at the time of the accident, is since deceased from unrelated causes. McElwee was struck as she crossed the street from a MAT bus station, constructed in the parking lot, to the east end of the mall. The bus station was next to a T-shaped intersection formed by two mall access roads and the mall itself. The witnesses disputed whether McElwee was in the crosswalk between the bus station and the mall at the time of the collision.

McElwee was taken to the hospital, where surgery was performed for a ruptured spleen and a bleeding pancreas. McElwee was hospitalized for 6 days. After trial, the district court awarded the plaintiff damages in the sum of $140,000, which included $26,217.51 in special damages.

MAT alleged in its answer, and argued throughout the proceedings, that the plaintiff had failed to comply with the notice provisions of the Act. Section 13-905 requires that

> [a]ll tort claims under the Political Subdivisions Tort Claims Act . . . shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision, or the governing body of a political subdivision may provide that such claims may be filed with the duly constituted law department of such subdivision.

In this case, notice of the plaintiff's claim against MAT was directly addressed to Pat Arps, the MAT director of administration and human resources. The evidence establishes that Arps is responsible for overseeing claims for personal injury and property damage made against MAT and for any resulting litigation, including the investigation of such claims. However, the evidence does not contain any policy or job description specifically conferring upon Arps any of the duties set forth in § 13-905.

Arps was notified of the accident on the day it occurred and opened an investigation. Soon after, Arps received a letter from the plaintiff's attorney notifying Arps of the plaintiff's representation and requesting claim forms "[i]f you have any official claim forms to be filled out." Arps did not provide any such forms, as MAT does not have preprinted claim forms, and did not acknowledge receipt of the letter. The plaintiff's attorney sent another letter enclosing a notice of claim for the incident. Arps did not respond, although the letter requested acknowledgment. Subsequently, the plaintiff's attorney withdrew the claim. Arps placed both the purported claim and withdrawal of claim in her files, and discussed them with no one.

Arps testified that the MAT employee authorized to receive claims under the Act is the executive director of the board of directors, as the "official whose duty it is to maintain the official records." See § 13-905. The plaintiff presented evidence that Arps has, on some past instances, acknowledged claims pursuant to the Act. In those cases, MAT did not raise a defense of insufficient notice.

The district court stated that Arps "has not been designated to perform the duties described in Section 13-905." Nonetheless,

the district court concluded that "Plaintiff has met its' [sic] burden of proof in establishing by a preponderance of the evidence that Plaintiff has complied with the filing and notice provisions incumbent upon claimants under the Political Subdivisions Tort Claims Act."

## ASSIGNMENTS OF ERROR

MAT assigns, consolidated and restated, that the district court erred in (1) finding the plaintiff complied with the notice provisions of the Act, (2) considering the plaintiff's evidence of MAT's acceptance and acknowledgment of claims filed in other cases, (3) finding that the proximate cause of the collision was Waltrip's failure to yield to McElwee in the crosswalk, (4) not ascribing contributory negligence to McElwee, (5) finding that McElwee was in the crosswalk when the collision occurred, (6) failing to find that McElwee assumed the risk of the accident, (7) finding that Waltrip's view to the area east of the intersection was partially obscured by another bus, and (8) awarding excessive damages.

## STANDARD OF REVIEW

In actions brought pursuant to the Act, the findings of a trial court will not be disturbed on appeal unless they are clearly wrong. *Mondelli v. Kendel Homes Corp.*, 262 Neb. 263, 631 N.W.2d 846 (2001). Where the relevant facts are undisputed, however, whether the notice requirements of the Act have been satisfied is a question of law, on which an appellate court reaches a conclusion independent of the lower court's ruling. See, *Wilder v. Grant Cty. Sch. Dist. No. 0001*, 265 Neb. 742, 658 N.W.2d 923 (2003) (requirements of statute are question of law); *Springer v. Bohling*, 259 Neb. 71, 607 N.W.2d 836 (2000) (question of law determined independent of lower court's ruling); *Woollen v. State*, 256 Neb. 865, 593 N.W.2d 729 (1999) (where facts are undisputed, whether liability precluded by sovereign immunity is question of law).

A claim of equitable estoppel rests in equity, and in an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the trial court. *Olsen v. Olsen*, 265 Neb. 299, 657 N.W.2d 1 (2003).

## ANALYSIS

■ We first address whether the plaintiff complied with the notice requirements of the Act. As previously noted, claims made under the Act are to be filed with "the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision," or, if designated, the law department of the political subdivision. § 13-905. While not a jurisdictional prerequisite, the filing or presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the Act. *Keller v. Tavarone*, 262 Neb. 2, 628 N.W.2d 222 (2001). If a political subdivision, by an appropriately specific allegation in a demurrer or answer, raises the issue of the plaintiff's noncompliance with the notice requirement of § 13-905 of the Act, the plaintiff has the burden to show compliance with the notice requirement. *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990). In order to meet that burden in the instant case, the plaintiff must show that Arps, the person to whom the plaintiff's sole notice of claim was directly addressed, was, in fact, a person designated by § 13-905 for the filing of a claim made under the Act.

■ The district court, in concluding that the plaintiff had met its burden of proof with respect to the notice requirement, cited *Franklin v. City of Omaha*, 230 Neb. 598, 432 N.W.2d 808 (1988), for the proposition that substantial compliance with the statutory provisions pertaining to the content of a claim supplies requisite and sufficient notice to a political subdivision. However, in *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989), we explained that the substantial compliance doctrine was inapplicable to situations in which the political subdivision contends the claim was not filed with a recipient designated by § 13-905. We stated that

> [o]ur previous decisions regarding substantial compliance with the notice provisions of the . . . Act concern cases in which a political subdivision contended that the *content* of a filed claim was deficient as notice to the governmental subdivision. "[S]ubstantial compliance with the statutory provisions *pertaining to a claim's content* supplies the requisite and sufficient notice to a political subdivision in accordance

with [§ 13-905] . . . ." [Here], the city does not contend that the content of [the] letter is inadequate notice. . . . Rather, the city contends . . . that the deficiency regarding [the] claim is found in the fact that a "claim" was not filed with a recipient designated by § 13-905 pertaining to the filing of a claim against a political subdivision.

. . . .

. . . [W]e hold that for substantial compliance with the written notice requirements of the . . . Act, within 1 year from the act or omission on which the claim is based, the written notice of claim must be filed with an individual or office designated in the act as the authorized recipient for notice of claim against a political subdivision. A notice of claim filed only with one unauthorized to receive a claim pursuant to § 13-905 does not substantially comply with the notice requirements of the . . . Act.

(Emphasis supplied.) (Citations omitted.) *Willis*, 232 Neb. at 538-39, 441 N.W.2d at 849-50. Based on that holding, we concluded that the plaintiff's notice of claim, which had been provided to the city's insurance representative, was deficient.

Since *Willis*, courts applying Nebraska law have consistently rejected arguments that the notice requirement of the Act can be satisfied by claims presented to persons other than those specifically designated by § 13-905. See, *Centric Jones Co. v. City of Kearney, Neb.*, 324 F.3d 646 (8th Cir. 2003) (utilities director); *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999) (risk management office); *Schoemaker v. Metropolitan Utilities Dist.*, 245 Neb. 967, 515 N.W.2d 675 (1994) (claims adjuster); *Keene v. Teten*, 8 Neb. App. 819, 602 N.W.2d 29 (1999) (insurance representative). See, also, *Shrum v. Kluck*, 85 F. Supp. 2d 950 (D. Neb. 2000) (rejecting substantial compliance argument), *affirmed* 249 F.3d 773 (8th Cir. 2001).

The plaintiff does not dispute, on appeal, that the substantial compliance doctrine is inapplicable. Rather, the plaintiff argues that Arps was, in fact, a person designated by § 13-905 to file claims made under the Act. However, the record simply does not establish that Arps was a clerk, secretary, or official responsible for maintaining the official records of the political subdivision. Instead, the evidence establishes that the executive director of

the MAT board of directors was responsible for keeping the official records.

The plaintiff bases its argument on evidence presented of what Arps and MAT did regarding other claims. The plaintiff contends that Arps is responsible for overseeing all claims; that in other cases, Arps has acknowledged claims; and that in at least one of those cases, MAT settled the claim instead of raising lack of notice as an affirmative defense. However, the plaintiff cites no authority for the proposition that failure to raise a defense in one case precludes raising that defense in another, unrelated action. The fact that Arps may have accepted claims in the past does not meet the plaintiff's burden of showing that Arps had the authority to accept the claim in this case. See *Munroe v. Booth*, 305 N.Y. 426, 113 N.E.2d 546 (1953).

Nor has the plaintiff presented any evidence that Arps was a de facto clerk, secretary, or official recordkeeper for MAT. There is no evidence that Arps was appointed to an office named in § 13-905, or was acting in such a capacity in a way calculated to induce people, without inquiry, to suppose her to be the occupant of one of those offices. See *Prucka v. Eastern Sarpy Drainage Dist.*, 157 Neb. 284, 59 N.W.2d 761 (1953) (explaining de facto officer doctrine). As will be discussed more fully below, the plaintiff can point to no misleading representation by Arps or MAT indicating that Arps had any of the duties set forth in § 13-905. In short, the record contains no evidence contrary to the conclusion that Arps has not been designated to perform the duties described in § 13-905.

The plaintiff also relies on the language of *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989), in which we discussed the purpose of the notice requirement. We stated that

[a] notice which has been filed with a person or recipient designated by the [A]ct and which contains appropriate information to satisfy the notice requirement of the [A]ct provides a political subdivision with an opportunity to investigate, and possibly settle, a tort claim. . . . However, a notice of claim given to one who is not designated to receive notice under the . . . Act may prevent a political subdivision's opportunity to investigate and settle claims inasmuch as an unauthorized recipient of notice very likely

lacks power to initiate an investigation into the claim with a view toward settlement or formulation of a defense in litigation over an unsettled claim.

(Citation omitted.) *Willis*, 232 Neb. at 539, 441 N.W.2d at 850. The plaintiff argues that a notice provided to Arps satisfies this purpose because she is authorized to investigate claims.

However, this argument is contrary to *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999); *Schoemaker v. Metropolitan Utilities Dist.*, 245 Neb. 967, 515 N.W.2d 675 (1994); and *Keene v. Teten*, 8 Neb. App. 819, 602 N.W.2d 29 (1999), in which the persons notified of the claims were authorized to investigate, but were nonetheless not designated to perform the duties set forth in § 13-905. While § 13-905 does facilitate the timely investigation of claims, as stated in *Willis, supra*, it is also obviously intended to ensure that notice of pending claims is provided to those who have a legal duty to file those claims in the official records of the political subdivision, and to notify the governing body of the subdivision.

■ While a subordinate employee may ultimately be directed to oversee the administration of the claim, it is still necessary that the claim be filed in the official records and made known to the governing body, and § 13-905 facilitates this purpose by requiring that claims be presented to the officer of the political subdivision with the legal responsibility for filing such records. "It would defeat the purpose of § 13-905 if mere knowledge of an act or omission, by a nondesignated party, was sufficient to satisfy the requirements of that section." *Schoemaker*, 245 Neb. at 973, 515 N.W.2d at 679. In any event, we are not at liberty to ignore the plain language of the statute. In the absence of ambiguity, courts must give effect to statutes as they are written. *City of Omaha v. Kum & Go*, 263 Neb. 724, 642 N.W.2d 154 (2002). Arps did not have any of the duties set forth by the unambiguous language of § 13-905, so the notice of claim directed to Arps was not effective notice under the Act. The plaintiff's purported claim did not meet the plainly stated requirements of § 13-905.

Finally, the plaintiff complains that Arps took no action to inform counsel that the executive director was authorized to receive the claim, even after she was asked to acknowledge

receipt of the claim. We view this as an argument that MAT is equitably estopped from asserting lack of notice as a defense.

■ The doctrine of equitable estoppel will not be invoked against a governmental entity except under compelling circumstances where right and justice so demand; in such cases, the doctrine is to be applied with caution and only for the purpose of preventing manifest injustice. *Simons v. Simons*, 261 Neb. 570, 624 N.W.2d 36 (2001). Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of contract, or of remedy. *Franksen v. Crossroads Joint Venture*, 245 Neb. 863, 515 N.W.2d 794 (1994).

■ Six elements must be satisfied for the doctrine of equitable estoppel to apply: (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; (4) lack of knowledge and the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel. *Capitol City Telephone v. Nebraska Dept. of Rev.*, 264 Neb. 515, 650 N.W.2d 467 (2002).

■ The record in this case fails to establish the elements for estoppel. There is no evidence to suggest that Arps or MAT misrepresented that Arps was designated by § 13-905 to file claims made under the Act or that the plaintiff relied on any such representation. Arps did not reply to or acknowledge the plaintiff's "claim" or otherwise lull the plaintiff into a false sense of security regarding the purported filing. There is no legal duty on

the part of a political subdivision, or any other party, to inform an adversary of the existence of a statute of limitations or other nuance of the law. See *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999). This is particularly so where the plaintiff did not inquire of the political subdivision to whom the claim should have been addressed. An estoppel cannot arise where the party claiming estoppel is equally negligent or at fault. *Lindsay Ins. Agency v. Mead*, 244 Neb. 645, 508 N.W.2d 820 (1993).

The Act contains a clear procedure for filing a tort claim against a political subdivision, which information was ostensibly possessed by the plaintiff's counsel, and no one informed the plaintiff or plaintiff's counsel that the filing of a claim with another person was unnecessary. See, *Schoemaker v. Metropolitan Utilities Dist.*, 245 Neb. 967, 515 N.W.2d 675 (1994); *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989). See, also, *Keene v. Teten*, 8 Neb. App. 819, 602 N.W.2d 29 (1999). We conclude that MAT was not estopped from raising the defense of noncompliance with the notice requirement.

The district court erred in concluding that the plaintiff satisfied the notice requirement of the Act. Because the plaintiff did not comply with a condition precedent to commencement of a suit under the Act, see *Keller v. Tavarone*, 262 Neb. 2, 628 N.W.2d 222 (2001), the plaintiff's petition should have been dismissed. Having so determined, we need not consider MAT's remaining assignments of error.

## CONCLUSION

The district court erred in determining that the plaintiff met the notice requirements of the Act. The judgment of the district court is reversed, and the cause is remanded with directions to dismiss the plaintiff's petition.

REVERSED AND REMANDED WITH DIRECTIONS.

GERRARD, J., concurring.

It is not possible to condone the behavior of Arps and MAT in this case. One would think that a political subdivision's responsibility to its constituents, and in this case, MAT's relationship with its customers, would be well served by at least taking some steps to ensure that potential claimants understand the requirements of MAT's claims process. The absence of a legal obligation does not

preclude a political subdivision from acting fairly toward a potential claimant in an accident case. Nonetheless, the plaintiff in this case failed to satisfy the notice requirements of the Political Subdivisions Tort Claims Act (the Act), Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997), and MAT was under no *legal* duty to inform the plaintiff of the mistake prior to alleging a meritorious defense. Consequently, I join in the opinion of the court.

Pursuant to the requirements of the Act, as well established in this court's jurisprudence, it is the plaintiff who must ensure that notice of a claim has been filed with the appropriate agent of a political subdivision. If the identity of the appropriate party is unknown, mirroring the statutory language and addressing a claim to the "clerk, secretary, or other official whose duty it is to maintain the official records" of a political subdivision would, in my opinion, suffice to meet the statutory requirement. See § 13-905. See, e.g., *McLendon v. City of Houston*, 153 Tex. 318, 267 S.W.2d 805 (1954). Guesswork is not required. A claimant is entitled to rely on the representations and procedures of a political subdivision to identify the party to whom a claim should be addressed for filing—provided that the plaintiff is diligent in inquiring.

Because the plaintiff did not inquire in this case, however, there were no representations made by MAT on which the plaintiff could demonstrate reliance, and there is no basis to conclude that the notice provided to MAT met the requirements of the Act. Therefore, I join the opinion of the court.

McCORMACK and MILLER-LERMAN, JJ., join in this concurrence.